Roberts *v.* Prosser.

------

LEWIS ROBERTS, Respondent, *v.* DAVID B. PROSSER AND CHARLES R. KING, Appellants.

(GENERAL TERM, THIRD DEPARTMENT, SEPTEMBER, 1871.)

A creditor's action against the assignee for creditors of his debtor, in behalf of himself and other creditors in the same relation, who may come in and contribute to the expenses of suit, for an accounting and distribution of the funds chargeable to the assignee, is not within subdivision 2 of section 179, of the Code, " an action for money received," in " a fiduciary capacity," in which the defendant may be arrested.

Such an action contemplates more than a mere recovery of money received by the assignee, to wit, a judicial determination of the net amount, not merely of money received, but of money which ought to have been

received by the assignee from the assets, and with which he is charge-able, &c.

It seems the act (sub. 2, id.) does not intend by the words " in an action for money received," anything more than an action primarily and simply for the recovery of money; and does not go beyond cases where the person who has received the money in a fiduciary capacity may be sued for money had and received.

This was an appeal by the defendants from a judgment for the plaintiff after trial by the court. The facts are stated in the opinion of the court.

*J. McGuire,* for the plaintiff.

*D. B. Prosser,* for the defendants.

Present— MILLER, P. J., JAMES and PARKER, JJ.

PARKER, J. This is an action for false imprisonment, tried before the court, without a jury. Judgment was given for plaintiff for $100 damages, which was duly perfected; and defendants appeal.

One Mills made a general assignment to the plaintiff and one Myers, for the benefit of his creditors, in which James Roberts and the plaintiff were preferred creditors.

James Roberts subsequently brought a suit against the said assignees, to call them to an account, and obtain payment of his demand against said Mills out of the property so assigned, which suit was continued, after his death, by Andrew Roberts, executor, &c., of said James Roberts; and such proceedings were had that a judgment was rendered therein in favor of said Andrew Roberts, executor as aforesaid, against the said Lewis Roberts and said Myers, for $2,245.71.

Upon this judgment the defendants, who were the attorneys of the said Andrew Roberts, executor, &c., after having issued an execution against the property of said plaintiff and Myers, which was returned unsatisfied, issued an execution against the persons of said plaintiff and Myers, upon which the plaintiff was arrested and imprisoned in the jail of Schuyler county.

For this arrest and imprisonment, this action was brought.

The question in the case is, whether the action in which the judgment was obtained, upon which the execution issued, was brought for money received by said plaintiff and Myers in a fiduciary capacity, within the meaning of the second subdivision of section 179 of the Code.

That part of the section upon which the question arises is as follows:

"The defendant may be arrested * * * in an action for money received * * * by any factor, agent, broker, or other person, in a *fiduciary capacity*."

It is very difficult to avoid the conclusion that an assignee of an insolvent debtor, for the benefit of his creditors, holds the assigned property and its proceeds in a fiduciary capacity.

Admitting that he does, and that the plaintiff and Myers, under the assignment to them, were trustees, and occupied a fiduciary relation to their assignee and his creditors, still, the further question arises, was the action, in which the judgment on which the execution was issued was obtained, brought "for money received by" them in such capacity? I am inclined to think not, within the meaning of the act. The action was brought, primarily, to compel an accounting, and, then, a distribution of the fund, with which the assignees should be found chargeable, among the creditors of Mills, pursuant to the directions of the assignment. It was brought by James Roberts, "in behalf of himself and all other persons, creditors of Robert Mills, standing in the same relation with him, who are willing to come in and contribute to the expense of the action."

An interlocutory judgment, or order, was first obtained, by which it was referred to a referee to take and state an account of all the property of Mills which had come to the hands of the assignees, and by which the referee was directed, upon such accounting, to charge the assignees with all property of Mills which, with reasonable diligence, they might have obtained possession of, and moneys due him which they had collected, or might, with reasonable diligence, have collected,

and to give them credit for all their legal expenses in the execution of their trust, together with their legal commissions, and all payments made by them to creditors of Mills, according to the provisions and preferences contained in the assignment; and by which he was also directed to ascertain and report "who and what creditors are entitled to receive the moneys, if any, which shall be found in the hands of the defendants upon the said accounting, or which, on the principles herein adjudged, they are chargeable with."

In pursuance of which order, the referee did proceed to take an account, whereby he found that the assignees were chargeable with $9,649.28, as the net sum applicable to the payment of the debts of the assignor; that the amount of demands included in the first class of creditors (in which class James Roberts and the plaintiff Lewis Roberts were placed by the assignment), who had duly proved their demands before him, was $10,863.66; that the whole amount of said James Roberts' demand, with interest, on the 31st day of October, 1850, was $1,012.59, and that his *pro rata* share of the net proceeds of the assigned property was $898.84, which sum, with interest to the date of the report, the referee reported due the said Andrew Roberts, executor, &c., from the said assignees, upon said accounting, amounting to $1,968.48; and for this sum and costs, amounting to $2,245.71, judgment was subsequently ordered and entered against the said assignees in favor of the executor.

Now this was not an action simply to recover money received by the defendants under the assignment; but it contemplated much more, to wit, the judicial determination of the net amount, not merely of money received, but of moneys which ought to have been received by the assignees from the assets of Mills, and with which they were chargeable; the amount of debts owing by Mills, entitled, under the assignment, to the whole or any part of the sum with which the assignors were so chargeable; and the distribution of such fund, by a full or *pro rata* payment among the creditors who should come in and contribute to the expenses of the suit.

Roberts *v.* Prosser.

The act, I think, does not intend by the words "in an action for money received" anything more than an action primarily and simply for the recovery of money. The language of the section seems to imply this. It is "for money received by any factor, agent, broker, or other person in a fiduciary capacity," not for money received by an executor, administrator, guardian, or trustee. Neither of these are named in the section. If it had been intended to subject these to arrest and imprisonment upon execution, in actions brought to compel them to account, I think it would have been so specifically provided in the section. The scope of the provision does not seem to go beyond cases where the person who has received the money in a fiduciary capacity, may be sued for money had and received.

The act to abolish imprisonment for debt (*Laws of* 1831, *chap.* 300,) although it excepted from its operation actions upon promises to marry, and for some other causes of action arising upon contract, yet did not hold executors, administrators, guardians, and other similar trustees liable to arrest in actions brought against them, based upon their duties as such; and I do not think it has been the policy or intention of the law since, to make them liable.

The fiduciary relations indicated by the 179th section of the Code, are those immediate and direct ones, arising between parties, when one, by the confidence of the other, has received and holds the specific property or money of such other, as where a factor, an agent, or a broker holds the money of his principal, and not where a trustee holds money, respecting which he has duties to perform to several respectively, and which each one of his several *cestuis que trust* has a separate specific claim upon, and for which, no one for himself alone can bring suit, but in which all are interested, and to all of whom he must account.

In the case at bar, therefore, I think the plaintiff in this suit was not liable in the suit against him, as assignee, to arrest, under section 179, of the Code; and consequently that the execution against his person in that suit was unauthorized,

and no justification to the defendants in this action who issued it for the imprisonment complained of in this suit.

The decision of the judge, at circuit, was right, and the judgment ordered by him must be affirmed with costs.

MILLER, J. concurred.   JAMES, J., expressed no opinion.

Judgment affirmed.